STATE OF CONNECTICUT *v.* MARK FAMIGLIETTI
(13991)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued May 29—decision released July 23, 1991

*Wesley W. Horton,* with whom were *Jeffrey A. Hoberman* and *William A. Conti,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Corinne Klatt,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The principal issue in this appeal is the sufficiency of the evidence to sustain the conviction of the defendant, Mark Famiglietti, on a charge of having committed arson in the first degree in violation of General Statutes § 53a-111 (a) (2) and (4).[1] After a jury trial that resulted in a verdict of guilty, the trial court

---

[1] "[General Statutes] Sec. 53a-111. ARSON IN THE FIRST DEGREE: CLASS A FELONY. (a) A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or

denied the defendant's motion for a judgment of acquittal and sentenced him to imprisonment for a term of twenty years, execution suspended after ten years, with five years probation. The defendant has appealed directly to this court pursuant to General Statutes § 51-199 (b) (3). We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. Valley Appliance, Inc., a retail household appliance store in Waterbury, was the scene of an intense, albeit short-lived, fire on December 10, 1988. The store was a family business, having been owned by the defendant's father until his death. At the time of the fire, the defendant's mother was the president of the corporation that owned the business, while the defendant was its vice president and its day-to-day manager.

On the day of the fire, the defendant returned to the store at about 5:30 p.m. He unlocked the front door and entered the store to gather some papers. He saw no other person inside. In preparation for leaving for the evening, he called a Sonitrol operator at about 5:51 p.m. to initiate the store's "intrusion detection" system. He "coded out" to a Sonitrol operator, who, recognizing the defendant by his voice and his code number, activated the security system. The system was designed to signal the defendant's departure from the building by the activation of a red light indicator. During the interval before the red light indicator became activated, the Sonitrol operator heard sounds of someone moving around inside the store and "crackling" sounds that

occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant fire; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of personal injury.

"(b) Arson in the first degree is a class A felony."

became "loud popping noises." After taking further precautionary steps, including trying to reach the store by telephone, the operator called the responsible authorities at 6:06 p.m. to report a fire.

Upon their arrival at the store at 6:15 p.m., the firefighters found the building full of thick black smoke and an intensely hot fire. In about one hour, they succeeded in extinguishing the fire, which was limited to the building's outer office area and a back furnace room. In fighting the fire, the firefighters were all exposed to the risk of backdrafts, explosions, and roof collapse, and two firefighters were actually injured.

A determination by the fire marshal that the fire had been deliberately set by the use of accelerants led to the defendant's trial and conviction. After a trial in which the parties presented conflicting evidence about the cause of the fire and about the time of the defendant's departure from the premises, the jury found the defendant guilty as charged.

The defendant has raised five issues in his appeal. Asserting that he is entitled to be acquitted of the charge of arson, he urges us: (1) to adopt a "substantial evidence" standard for appellate review of the sufficiency of the evidence; and (2) to find the evidence adduced at his trial to be insufficient to support his conviction. Asserting, alternatively, that he is entitled to a new trial, he claims that the proceedings against him were tainted by: (3) prosecutorial misconduct; (4) the jury's receipt of an improper exhibit list; and (5) the court's failure to give a unanimity charge with respect to subdivisions (2) and (4) of § 53a-111 (a). We are unpersuaded.

I

The defendant's principal claims concern the sufficiency of the evidence to convict him of the charge of

arson. To bolster his claim that the trial court should have granted his motion for acquittal, he contends that we should adopt a "substantial evidence" standard for appellate review. He also contends that, on any applicable standard, the evidence at trial did not establish beyond a reasonable doubt that he was guilty of the crime with which he had been charged.

## A

This court has consistently employed a two-part analysis in appellate review of the sufficiency of the evidence to sustain a criminal conviction. "Whether we review the findings of a trial court or the verdict of a jury, our underlying task is the same. . . . We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991), and cases therein cited. The defendant urges us to reconsider this standard, on prudential or constitutional grounds, and to adopt instead a "substantial evidence" test of appellate review.

The defendant's argument is predicated on the proposition that our existing standard for appellate review permits affirmance of a criminal conviction that rests on a quantum of evidence that can fairly be characterized as a "mere modicum" or "insubstantial." We do not agree. As *State* v. *Jarrett* reiterates, we have undertaken independently to determine whether "the trial court or the jury could reasonably have concluded

that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt." Id., 771. Consistently with that standard of review, we have on occasion found the evidence to be insufficient, as in *State* v. *Carpenter,* 214 Conn. 77, 84, 570 A.2d 203 (1990), on which the defendant relies. Contrary to his assertion, however, *State* v. *Carpenter* does not signal the de facto adoption of a new or different standard of appellate review, but illustrates the searching review of criminal convictions that this court presently undertakes in accordance with our existing standard. The scope of our appellate review is therefore consistent with the due process based warning in *Jackson* v. *Virginia,* 443 U.S. 307, 320, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), that "a 'modicum' of evidence could [not] by itself rationally support a conviction beyond a reasonable doubt."

B

We turn next to the defendant's specific claims of evidentiary insufficiency. He contends that the state failed to establish, beyond a reasonable doubt, that: (1) the fire at the Valley Appliance store was intentionally set rather than accidental; (2) he was the person criminally responsible for its occurrence; or (3) firefighters at the scene were subjected to a substantial risk of injury. We disagree.

1

Whether the fire was incendiary or accidental in origin was an issue that was vigorously contested at trial. Extensive conflicting expert testimony was adduced by the state and the defendant.

For the state, the fire marshall based his opinion that accelerants had been used on inferences drawn from physical observations of the scene of the fire. He com-

mented, inter alia, on the evidence of localized heavy damage near the floor level of the two rooms to which the fire was confined, noting that it was unusual in a fire of brief duration to have more intense heat near the floor rather than near the ceiling. He also remarked on the evidence of "V-patterns" of burn damage, at several places in the two rooms, which indicated that there was no single point of origin from which this fire spread to other areas. He concluded that the pattern of fire damage was not attributable to combustible materials falling from the ceiling because, according to tests done at the state laboratory, the ceiling material was not combustible. These physical manifestations led him to conclude that accelerants had been used even though samples of material from the burned area of the premises did not manifest any trace of flammable liquid. He explained that some types of accelerants would leave no traces: a flammable liquid with a low boiling point would evaporate in the intense heat of the fire; and a water-soluble liquid would be obliterated by firefighting hoses in the process of extinguishing the fire. In his view, the physical evidence ruled out accidental causes for the fire, including electrical malfunctioning. An electrical expert testified, as a rebuttal witness for the state, that the electrical service panel in the back furnace room did not manifest physical evidence of having undergone an explosion.

The defendant's expert witnesses, on the other hand, concluded, on the basis of their investigation, that an electrical malfunction in an air conditioning-heating unit had caused a fire in the electrical service panel in the back furnace room which in turn had ignited combustible materials in that room and in the adjacent office room. They relied on physical evidence consisting, inter alia, of a molten and beaded piece of copper wiring in the electrical service panel and the carbonized

condition of the electrical outlet for the air conditioner. They found evidence confirming their hypothesis in the electrical condition of a water meter on the premises and in the electrical plug for the air conditioner-heating unit. In their view, the charring on the floor resulted from falling ceiling materials that ignited as the fire spread and gained intensity.

On this state of the record, the jury as trier of fact had the difficult task of choosing which expert testimony to find credible. The defendant has not challenged the accuracy of the comprehensive instructions that the trial court gave the jury to assist it in this undertaking. It is reasonable to infer from the jury's verdict that it rejected the expert testimony offered by the defendant and accepted that offered by the state. The jury was not bound by the opinion of any of the expert witnesses and could reject any or all of such testimony, regardless of whether it believed or disbelieved the subordinate facts on which the opinion was based. *State v. Avcollie,* 178 Conn. 450, 461, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980); C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 7.16.6, p. 178. Once the state's expert testimony was found credible by the jury, however, that evidence established beyond a reasonable doubt that the fire in this case was incendiary in origin. See *State v. Silano,* 204 Conn. 769, 785, 529 A.2d 1283 (1987); *State v. Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985).

2

The defendant also challenges the evidence that it was he who intentionally started the fire. Concededly, when the defendant arrived at the premises shortly before the fire, the store was locked and no one else was visible inside. The firefighters who arrived at the

scene, approximately twenty minutes after the defendant's departure, found the store locked and a smoky, intensely hot fire in progress. The Sonitrol operator to whom the defendant "coded out" at 5:51 p.m. testified that, in the time interval before the activation of a red light indicator showing that the building's front door had been opened and closed, he had heard "crackling" sounds that became "loud popping noises." This evidence, if the jury found it credible, established the defendant's culpability beyond a reasonable doubt.

The defendant contends, however, that the jury could not reasonably have credited the Sonitrol operator's testimony because of discrepancies between his trial testimony and a written incident report that he had prepared on the day of the fire. The operator's testimony and his written report agree that the defendant had called Sonitrol to "code out" at 5:51 p.m. At trial, the operator testified that, minutes later, he had heard crackling noises and a door opening and that he had activated his tape to record what he was hearing at about 5:53 or 5:54 p.m. Only thereafter had he heard a door open and observed the red light indicator go on. When the security system then registered that it had become disconnected, he had unsuccessfully tried by telephone to reach someone at the store at about 5:54 or 5:55 p.m. After listening to the tape again, and consulting with another operator, he had concluded that there was a fire in progress, and had then called the fire department at approximately 6:06 p.m. The incident report that he then completed indicated, however, that 6:06 p.m. was the time when the fire started and the taping started. At that time, according to the defendant, he had already left the store and therefore could not have set the fire. Given the unlikelihood of having someone personally activate a security system just before committing arson, the defendant maintains

that the evidence as a whole fails to establish beyond a reasonable doubt his involvement in the crime with which he was charged. We disagree.

In assessing the credibility of the Sonitrol operator, the jury might reasonably have assigned weight to the fact that he never wavered in his testimony that he had heard suspicious crackling sounds at the Valley Appliance store before the red light indicator signaled the defendant's departure. That crucial aspect of his testimony was not impeached by the discrepancies about the precise time that these events occurred. Indeed, his testimony was buttressed by the tape of the incident that was before the jury. The jury might reasonably have accepted his explanation that the incident report reflected the time when he was filling out the report, rather than the time when the reported events had actually occurred. See, e.g., *State* v. *Myers*, 193 Conn. 457, 472-74, 479 A.2d 199 (1984).

Viewing the cumulative effect of the evidence as a whole, and giving due weight to all the considerations urged upon us by the defendant, we are persuaded that the state has established beyond a reasonable doubt that the defendant set the fire at the Valley Appliance store. Unlike *State* v. *Osman*, 218 Conn. 432, 589 A.2d 1227 (1991), in which we concluded that the identity of the perpetrator of a robbery had not been proven beyond a reasonable doubt, the record in this case contains direct evidence of the defendant's presence at the premises shortly before the fire and of his continued presence there at a time when crackling sounds suggested that a fire had been started. The jury might have determined beyond a reasonable doubt that no one other than the defendant had the opportunity to start the fire. See *State* v. *Jordan*, 136 Conn. 201, 204, 69 A.2d 834 (1949). The state did not have to establish a motive for the arson. *State* v. *Ruffin*, 206 Conn. 678,

681, 539 A.2d 144 (1988); *State* v. *Pisano*, 107 Conn. 630, 632, 141 A. 660 (1928). The trial court, in denying the defendant's motion for acquittal, not only concurred in the jury's verdict but characterized the evidence against the defendant as "overwhelming." Accordingly, we reject the defendant's contention that the evidence was legally insufficient to implicate him in the crime.

3

The defendant's final challenge to the sufficiency of the evidence focuses on the requirement of § 53a-111 (a) (4) that the state prove, beyond a reasonable doubt, that "at the scene of such fire or explosion, a peace officer or firefighter is subjected to a substantial risk of bodily injury." The defendant maintains that the state failed to prove that the fire at the Valley Appliance store posed a "substantial risk of bodily injury."

This claim need not long detain us. The statute requires proof of a risk of substantial injury, not serious injury in fact. Cf. *State* v. *Moye*, 199 Conn. 389, 398–99, 507 A.2d 1001 (1986); *State* v. *Parmalee*, supra, 161–62 (construing substantially similar language in General Statutes § 53a-112). The fortunate fact that the two firefighters who were injured at the scene suffered minor rather than major harm is therefore not dispositive. As the state notes, the jury heard testimony that the firefighters had encountered such thick smoke and such intense heat that they had to wear breathing apparatus and to crawl toward the flames that they sought to extinguish. They had been exposed to the risk of backdrafts, explosion and roof collapse. As in *State* v. *Silano*, supra, this evidence was sufficient for the jury, properly instructed, to find beyond a reasonable doubt that the firefighters were exposed to a risk of substantial injury.[2]

---

[2] In the circumstances of this case, we decline to consider the defendant's contention that we need to decide what evidence would suffice to sus-

II

The defendant urges us to hold that, even if he is not entitled to an acquittal, he is nonetheless entitled to a new trial because of fundamental unfairness in the conduct of his trial. He maintains that the trial court should have: (1) granted his motion for mistrial on the ground of prosecutorial misconduct; (2) granted his motion for mistrial on the ground of the clerk's inadvertent submission of an improper exhibit list to the jury; and (3) instructed the jury more explicitly on the need for unanimity in its verdict. We disagree.

In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion. *State* v. *Marra,* 215 Conn. 716, 732, 579 A.2d 9 (1990); *State* v. *Cruz,* 212 Conn. 351, 364, 562 A.2d 1071 (1989); *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

The defendant's claim of prosecutorial misconduct rests on the efforts by the prosecutor to establish, through evidence about the terms of an insurance policy, that the defendant had an ownership interest in the Valley Appliance store. In cross-examining the defendant, the prosecutor first attempted to impeach him on the basis of inconsistencies between his statements on the stand and in a deposition to the insurance company with regard to the fire. The trial court,

tain a conviction for arson in the second degree under General Statutes § 53a-112, with which the defendant was not charged. The defendant has not alleged any improper basis for the prosecutorial decision to charge him with having committed arson in the first degree.

finding no inconsistency, sustained the defendant's objection to this line of questioning but denied his motion for a mistrial. The prosecutor later returned to the insurance arena by asking the defendant whether he was named as an owner on an insurance policy covering the store. The trial court again sustained the defendant's objection but refused to grant his motion for a mistrial.

The trial court's refusal to grant either of these motions for a mistrial did not constitute an abuse of discretion. In ruling against the prosecutor's initial line of questioning, the court addressed the lack of demonstrated inconsistency between the deposition and the defendant's testimony, rather than the subject of insurance itself. When the prosecutor then asked for further guidance, the court indicated its preference for ruling on particular questions as they arose. In these circumstances, the prosecutor's further inquiry into insurance did not, as the defendant maintains, violate a specific earlier court ruling.[3] Furthermore, the issue of insurance was tangential at best to the issues on which the parties focused their attention at trial, namely, the cause of the fire and the defendant's presence on the premises at the relevant time.

We likewise conclude that the trial court did not abuse its discretion in failing to grant a motion for a

[3] The defendant also maintains that the trial court's failure to give the jury a curative instruction requires us to overturn the court's denial of the motion for mistrial. The court was not obligated to give such an instruction where the question had not been answered; *State* v. *Hafner,* 168 Conn. 230, 252, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975); especially without a further request by the defendant at the appropriate time. *State* v. *Malley,* 167 Conn. 379, 386, 355 A.2d 292 (1974). In the absence of a request, the court might reasonably have concluded that the defendant would have been more prejudiced than assisted by having the issue of insurance expressly revisited, even if only to exclude it from further consideration by the jury. The court repeatedly instructed the jury, furthermore, not to consider questions that the court had excluded on legal grounds.

mistrial because of the clerk's inadvertent submission of a list of exhibits to the jury just as the jury began its deliberations. The exhibit list included a reference to "bankruptcy papers," an exhibit that had been marked at trial for identification only, the trial court having refused to admit it as a full exhibit. The excluded exhibit was not itself submitted to the jury. Furthermore, the trial court immediately instructed the jury to disregard the exhibit list in its entirety. In light of the fact that testimony at trial had informed the jury that bankruptcy papers had been found on a desk in the Valley Appliance store on the night of the fire, we concur in the trial court's judgment that a curative instruction was all that was required in the circumstances. Viewing the circumstances as a whole, and mindful of the presumption that the jury heeds the instructions it receives from the trial court; *State* v. *Jennings,* 216 Conn. 647, 664, 583 A.2d 915 (1990); *State* v. *Gabriel,* 192 Conn. 405, 416, 473 A.2d 300 (1984); we conclude that the clerk's inadvertence was not so prejudicial as to require a new trial.

The defendant's final contention is that he is entitled to a new trial because the trial court, in instructing the jury on the elements of first degree arson, did not expressly tell the jury that it had to be unanimous in finding the defendant guilty under either § 53a-111 (a) (2) or § 53a-111 (a) (4). At a charge conference prior to the delivery of the instructions to the jury, in the absence of a relevant request to charge by the defendant, the state raised the question of a unanimity instruction. The court replied by indicating that it would charge each of the alternative bases for conviction in its entirety, so that the jury "would have to be unanimous in [its] verdict in the alternative." The defendant, by his silence, acquiesced in this proposed method of charging the jury. When the court accordingly charged the

jury that the state had to prove either injury to "any other person"; § 53a-111 (a) (2); or "substantial risk of personal injury" to a firefighter; § 53a-111 (a) (4); the defendant took no exception. The court's subsequent final charge included a general unanimity instruction but did not specifically relate this requirement to the alternative elements of the crime with which the defendant had been charged.

The state urges us not to reach the merits of the defendant's disagreement with the charge on the alternate grounds on which he might have been convicted. The state maintains that this claim, which concededly was unpreserved at trial, is not truly of constitutional magnitude. *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We have, however, held to the contrary. A claim bearing on the defendant's right to a unanimous verdict implicates a fundamental constitutional right to a fair trial and is thus reviewable despite the defendant's failure to request a specific unanimity charge or to take proper exceptions. *State* v. *Smith,* 212 Conn. 593, 604, 563 A.2d 671 (1989); *State* v. *Suggs,* 209 Conn. 733, 760, 553 A.2d 1110 (1989); and see *State* v. *Benite,* 6 Conn. App. 667, 671, 507 A.2d 478 (1986).

On the merits, we have not required a specific unanimity charge to be given in every case in which criminal liability may be premised on the violation of one of several alternative subsections of a statute. We have instead invoked a multipartite test to review a trial court's omission of such an instruction. We first review the instruction that was given to determine whether the trial court has sanctioned a nonunanimous verdict. If such an instruction has not been given, that ends the matter. Even if the instructions at trial can be read to have sanctioned such a nonunanimous verdict, however, we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts

with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged. *State* v. *Jennings,* supra, 662–63; *State* v. *Bailey,* 209 Conn. 322, 334, 551 A.2d 1206 (1988); see also *Schad* v. *Arizona,* 501 U.S.    , 111 S. Ct. 2491, 2496–2504, 115 L. Ed. 2d 555 (1991).

In this case, the defendant has not sustained his burden of showing that a unanimity charge was required. He has failed to articulate how the instructions as given demonstrate that the trial court sanctioned a nonunanimous verdict. Even if that hurdle could be surmounted, he has also failed to demonstrate how the evidence that the state presented manifested a conceptual distinction between direct injury and a substantial risk of injury to the firefighters on the scene.

The judgment is affirmed.

In this opinion the other justices concurred.