## STATE OF CONNECTICUT *v.* EDDIE FORD
## (11940)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued September 30—decision released November 30, 1993

*Robert G. Golger,* special public defender, for the appellant (defendant).

*Jacqueline J. Footman,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James Clark,* assistant state's attorney, for the appellee (state).

O'CONNELL, J. The defendant appeals from his conviction, after a jury trial, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[1] robbery in the second degree in violation of General Statutes § 53a-135 (a) (1)[2] and tampering with a witness in violation of General Statutes §§ 53a-151[3] and 53a-8.[4] The defendant was acquitted of a second count of tampering with a witness.

The defendant claims that (1) his conviction of both robbery in the first degree and robbery in the second degree violated his privilege against double jeopardy, (2) there was insufficient evidence to convict him of tampering with a witness and (3) there was insufficient evidence to support a jury charge of tampering with a witness on the theory of accessory liability. We affirm the trial court's judgment in part and reverse it in part.

[1] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] General Statutes § 53a-135 (a) provides in relevant part: "A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and (1) he is aided by another person actually present . . . ."

[3] General Statutes § 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."

[4] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

The jury could have reasonably found the following facts. On January 30, 1991, the defendant and a companion entered Store 24 located at 25 Broadway in New Haven. The defendant approached clerk Carlos Robles, pointed a knife at him and ordered him to open the cash register. Robles had difficulty doing so and during his attempts the defendant handed the knife to his companion, who walked around the counter and threatened to kill Robles if he did not open the register quickly. The defendant then became impatient, grabbed the register and fled with it to his girlfriend's apartment. Factual details giving rise to the witness tampering charge are included in the analysis of that claim.

## I

### DOUBLE JEOPARDY

The defendant's first claim is based on the fifth amendment to the United States constitution, the relevant portion of which provides, "[n]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." This constitutional provision applies to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although the Connecticut constitution does not include a specific double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution has been held to encompass protection against double jeopardy. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

In order to prevail on a double jeopardy claim, a defendant must satisfy a two-pronged test. First, the charges must arise out of the same act or transaction. Second, the charged crimes must be the same offense. *State* v. *Chicano,* 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115

L. Ed. 2d 1062 (1991), citing *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

A double jeopardy issue may arise in either of two ways. First, it may involve successive prosecutions; *Brown* v. *Ohio,* 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); or, second, it may involve simultaneous double jeopardy, where simultaneous prosecution for two nominally distinct crimes violates the constitutional privilege. See id.; *State* v. *Chicano,* supra. The present case implicates simultaneous double jeopardy. The defendant claims that he was given multiple punishments for the same crime in the same trial.

The seminal case in double jeopardy law is *Blockburger* v. *United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). In *Blockburger,* the United States Supreme Court held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Id., 304. Our Supreme Court has stated the rule as follows: "[I]f the elements of one offense as defined by the statute include the elements of a lesser offense; or if one offense is merely nominally distinct from the other; then double jeopardy attaches." *State* v. *McCall,* 187 Conn. 73, 91, 444 A.2d 896 (1982). The *Blockburger* rule does not bar the conviction of two offenses arising out of the same criminal incident if each crime contains an element not found in the other. *State* v. *Tweedy,* 219 Conn. 489, 495, 594 A.2d 906 (1991).

The first degree robbery count charged that "on January 30, 1991, at approximately 1:40 a.m. at Store 24, 25 Broadway in New Haven, the accused committed a robbery and in the course of commission of the crime,

*he or another participant in the crime used or threat-
ened the use of a dangerous instrument, a knife,* in vio-
lation of General Statutes § 53a-134 (a) (3)." (Emphasis
added.) The second degree robbery count charged that
"on January 30, 1991, at approximately 1:40 a.m. at
Store 24, 25 Broadway in New Haven, the accused com-
mitted a robbery, *and was aided by another person,
Michael Jones, actually present,* in violation of General
Statutes § 53a-135 (a) (1)." (Emphasis added.)

It is readily apparent that each count required proof
of an element that the other did not. The first degree
robbery count required proof that the defendant or
another participant in the crime used or threatened the
use of a dangerous instrument. The second degree rob-
bery count required proof that the defendant was aided
by another person actually present.

Despite the clear differences in the proof required
under the two counts alleged in the information, the
defendant urges us to extend our analysis beyond the
charging information to the evidence. He argues that
such analysis would demonstrate that, under the facts
of the present case, second degree robbery did not
require proof of an additional fact beyond those
required for first degree robbery. We are required,
however, to determine the existence of double jeopardy
by comparison of the statutes and not by examination
of the evidence. *Blockburger* v. *United States,* supra.

The defendant contends that *State* v. *Lonergan,* 213
Conn. 74, 77, 566 A.2d 677 (1989), cert. denied, 496
U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990),
permits us to look beyond the statutes in question and
to examine the evidence. The *Lonergan* court held that
if the same evidence that had been offered to prove a
crime is later used to prove a different crime, that
prosecution of the second crime is barred on double
jeopardy grounds. The flaw in the defendant's argu-

ment is that *Lonergan* is applicable only to successive trials and not to multiple punishments in a single trial (i.e., simultaneous double jeopardy). See *State* v. *Tweedy,* supra; *State* v. *Chicano,* supra, 707; *State* v. *Greco,* 216 Conn. 282, 291, 579 A.2d 84 (1990). We do not have the factual predicate for the reasoning of *Lonergan* in the present case.

The defendant properly points out that the *Blockburger* test is not a conclusive presumption, but rather is a rule of statutory construction. *Missouri* v. *Hunter,* 459 U.S. 359, 367, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983); *State* v. *Delgado,* 19 Conn. App. 245, 251, 562 A.2d 539 (1989). In light of this, the defendant claims that a conviction of both offenses is contrary to the intent of the statutes. To rebut the *Blockburger* rule of statutory construction, there must be "a *clear indication* of contrary legislative intent." (Emphasis in original; internal quotation marks omitted.) *State* v. *Delgado,* supra. The defendant has not brought any relevant legislative history to our attention that indicates that the legislature intended these two crimes be punished as one. We conclude that there was no double jeopardy violation.

## II

### TAMPERING WITH A WITNESS

On June 1, 1993, Robles, the store clerk, received four telephone calls in which the caller threatened that Robles would be a "dead man" if he testified against the defendant. Robles did not recognize the caller's voice and could not remember the name given in one of the calls, which was collect. He was certain, however, that it was not the defendant's name. The collect call was traced to a telephone located in the cellblock where the defendant was confined at the time of the call. The cellblock telephone is intended for use by inmates and can be used only for outgoing collect

calls. The correctional center rules require that prior to using the phone, an inmate must register the intended call with a correctional officer, who records the information in a daily log. No collect call to Robles was recorded in the correctional officer's log book. An administrative officer of the correctional facility testified that, despite the rule, it was not uncommon for prisoners to use the telephone without first registering the call with a correctional officer.

In his second claim, the defendant argues that there was insufficient evidence to convict him of tampering with a witness and in his third claim he argues that there was insufficient evidence to justify a jury instruction on being an accessory to tampering with a witness.[5] We will consider both claims together.

In reviewing an insufficiency of evidence claim in a jury case we employ a two-step analysis. First, we review the evidence construing it in the light most favorable to sustaining the facts impliedly found by the jury. Next, we decide whether, on the basis of the facts and the inferences reasonably drawn therefrom, the jury could have reasonably concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti*, 219 Conn. 605, 609, 595 A.2d 306 (1991).

The state never claimed to have proved that the defendant personally tampered with a witness. In fact, in his closing argument the prosecutor disavowed proving that the defendant actually made the offending

---

[5] In his statement of issues, the defendant mistakenly appealed his conviction under count *three* of the state's information, which was an unrelated tampering charge of which he was acquitted. His second and third claims on appeal seek reversal of his tampering conviction under General Statutes §§ 53a-151 and 53a-8, properly identified as count *four* of the state's information.

phone call.[6] Accordingly, we agree with the defendant's second claim that the evidence is insufficient to convict him of tampering with a witness on count four. This conclusion avails the defendant nothing, however, because the fourth count is framed so as to charge the defendant with also being an accessory to tampering with a witness.

The state claims to have proved that the defendant caused another person to make a threatening call to the state's principal witness, warning him not to appear in court. The applicable statute imposes criminal liability on any person "who solicits, requests, commands [or] importunes . . . another person" to commit a crime. General Statutes § 53a-8.[7] In this case, the record is completely devoid of evidence that the defendant engaged in any of the enumerated acts in order to obtain the services of another person in making the threatening phone call. Merely being the intended beneficiary of the call is not enough.

" '[A]lthough it is within the province of the jury to draw reasonable, logical inferences from the facts proven, [it] may not resort to speculation and conjecture.' " *State* v. *Gaynor*, 182 Conn. 501, 503, 438 A.2d 749 (1980). In the present case, it is speculation that

---

[6] During closing argument, the state's attorney stated the following: "Did Eddie Ford walk to the phone and get signed in? Does it matter? *The answer is it doesn't matter because in this case the state had charged him as an accessory. You don't have any direct evidence that Eddie Ford actually made the phone call and we don't claim that we have proven that Eddie Ford actually made the phone call.* You're going to hear from Judge Hadden the accessory statute. What it says is if someone arranges for something to happen, if they aid, solicit, importune or intentionally aid someone else to commit a crime, the crime of making the phone call threatening the witness to keep him from court . . . they are equally liable as if they had done the act themselves. Who would possibly want that call made other than Eddie Ford who happens to be in the same block? Who else in the jail could possibly know Carlos Robles was scheduled to testify on Thursday." (Emphasis added.)

[7] See footnote 4.

the defendant solicited, requested, commanded or importuned another person to make the phone call.

The trial court must not submit any issue to the jury on which the evidence would not support a finding. *State* v. *Adams,* 225 Conn. 270, 283, 623 A.2d 42 (1983); *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.,* 5 Conn. App. 579, 584, 501 A.2d 1214 (1985), cert. denied, 198 Conn. 803, 503 A.2d 172 (1986). Because the evidence in the present case would not have supported a guilty verdict on the charge of accessory to tampering with a witness, the trial court improperly instructed the jury thereon.

The judgment is reversed only as to the conviction of tampering with a witness and the case is remanded with direction to render judgment of not guilty of that crime.

In this opinion LAVERY, J., concurred.

DUPONT, C. J., dissenting. I respectfully dissent from that portion of the majority's opinion that concludes that there was insufficient evidence to convict the defendant of tampering with a witness as an accessory. The two-step analysis of *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991), would lead me to conclude that, construing the evidence in a way most favorable to upholding the conviction, the cumulative effect of the direct and circumstantial evidence and the logical inferences arising from that evidence could establish the defendant's guilt beyond a reasonable doubt of being an accessory to the crime of tampering with a witness.

There was undisputed direct evidence from which a jury could conclude reasonably that at least two people had attempted to induce a witness, Carlos Robles, to withhold his testimony or to absent himself from the defendant's trial. The question, however, is whether

a jury could also conclude reasonably that the direct and circumstantial evidence and the logical inferences to be drawn from that evidence that it was the defendant who had solicited or requested those persons to tamper with that witness.

Four phone calls were made, one from the cellblock in which the defendant was confined, and the others from places unknown. The person who called from the correction center knew when Robles would be testifying, a fact known to the defendant and very few others. This call and the other calls were made to the witness at his home and not to the store that was the scene of the alleged robbery. Robles' name was listed in the telephone directory as "Santos-Robles." It could be inferred by the jury that the only person knowing how to find the witness' telephone number in a directory or how to communicate with the witness directly and who also had a motive to induce the witness not to testify was the defendant.

On the basis of these facts and on the facts as stated by the majority, I would affirm the defendant's judgment of conviction of a violation of General Statutes §§ 53a-151 and 53a-81.