STATE OF CONNECTICUT *v.* EDDIE FORD
(14873)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued June 1—decision released August 9, 1994

*Jacqueline J. Footman,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *James G. Clark,* assistant state's attorney, for the appellant (state).

*Robert G. Golger,* special public defender, with whom, on the brief, was *Howard T. Owens, Jr.,* for the appellee (defendant).

CALLAHAN, J. The defendant, Eddie Ford, was convicted after a jury trial of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3),[1] rob-

---

[1] General Statutes § 53a-134 (a) provides in pertinent part: "ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of

bery in the second degree in violation of General Statutes § 53a-135 (a) (1),[2] and tampering with a witness in violation of General Statutes §§ 53a-151[3] and 53a-8.[4] He was sentenced by the trial court to a term of imprisonment of twenty years for robbery in the first degree, ten years for robbery in the second degree to run concurrently with his first sentence, and five years for tampering with a witness to run consecutively with his other sentences.

The defendant appealed from the judgment of conviction to the Appellate Court. The Appellate Court affirmed the judgment with respect to the conviction of robbery, but a divided court reversed his conviction of tampering with a witness because the majority determined that it had been based on insufficient evidence. *State* v. *Ford,* 33 Conn. App. 143, 634 A.2d 1188 (1993). We granted certification limited to the following question: "Did the Appellate Court properly conclude that there was insufficient evidence to convict the defendant of the crime of tampering with a witness, [in violation of] General Statutes §§ 53a-151 and 53a-8?" *State* v. *Ford,* 228 Conn. 918, 636 A.2d 849 (1994).

---

robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (3) uses or threatens the use of a dangerous instrument . . . ."

[2] General Statutes § 53a-135 (a) provides in pertinent part: "ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and (1) he is aided by another person actually present . . . ."

[3] General Statutes § 53a-151 (a) provides: "TAMPERING WITH A WITNESS: CLASS D FELONY. (a) A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."

[4] General Statutes § 53a-8 (a) provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

The details of the incident that led to the defendant's conviction are set forth in the opinion of the Appellate Court; *State* v. *Ford,* supra, 33 Conn. App. 145; and may be briefly summarized as follows. On January 30, 1991, the defendant and a companion entered Store 24, located on Broadway Street in New Haven. The defendant placed an item on the counter, pointed a knife at the store clerk, Carlos Robles, and ordered him to open the cash register. When Robles had difficulty opening the register, the defendant handed the knife to his companion, who walked around the counter and threatened to kill Robles if he did not open the register quickly. Becoming impatient, the defendant grabbed the register from the counter and fled the scene. Id.

Regarding the charge of tampering with a witness, Robles testified that he originally had been scheduled to be called by the state to testify in the defendant's trial on Thursday, June 4, 1992. He also testified that on June 1, 1992, he had received three or four telephone calls in which the callers had threatened that he would be a "dead man" if he testified "on Thursday." One of these calls was a collect call for which he had accepted the charges. Robles stated that he had not recognized the collect caller's voice and did not recall the name given by the operator who had handled the collect call, but that he was certain the name was not that of the defendant.

The collect call to Robles was traced to a telephone located in the cellblock at the New Haven community correctional center where the defendant was confined. A captain at the correctional center testified that the defendant and approximately nineteen other inmates had had access to the telephone in the cellblock at the time that the collect call had been made. He further testified that the telephone in the cellblock is intended for inmate use and can be used only for outgoing collect calls. The rules of the correctional center require

an inmate to register with a correctional officer before using the telephone in the cellblock, and a correctional officer ordinarily records in a daily log the inmate's name, cell number and the time the person begins and ends the telephone call. The log is only a "partial record,"[5] however, as the correctional officers may not record each and every telephone call because of their need to attend to other duties that may divert their attention away from the inmates' use of the telephone. The captain also testified that no collect call to Robles had been recorded in the correctional officer's log book on June 1, 1992.

The information charged the defendant with two counts of tampering with a witness in addition to the two robbery charges. Count three of the information charged the defendant with tampering relating to an alleged threat by the defendant directed to his former girlfriend. Count four of the information charged tampering relating to the collect call to Robles. At trial, the state did not attempt to prove that the defendant actually had made the threatening telephone call to Robles. Rather, the state argued that the defendant had caused the threatening call to be made by another person. After instructing the jury on count three of the information and explaining the charge of tampering with a witness under § 53a-151, the trial court informed the jury that those same instructions also applied to count four of the information. As to count four, however, the court also instructed the jury on accessory liability under § 53a-8.[6] The jury returned a verdict of

---

[5] For instance, according to the daily log for June 1, 1992, nine inmates are still on the telephone.

[6] The trial court instructed the jury that "[a]ccessory is a criminal participant in the crime. If two or more persons participate in the crime they are equally responsible even though it was the immediate act of only one which brought the crime about. Participate means not only actively sharing in its final commission, but in doing anything to aid or assist the conduct which constitutes the crime. . . . In order to find [that] a person was

guilty on the two robbery counts and on the tampering with a witness charge that related to Robles. The defendant was acquitted of the charge of tampering relating to his former girlfriend contained in count three.

The defendant appealed to the Appellate Court, claiming that his conviction of both robbery in the first degree and robbery in the second degree violated his privilege against double jeopardy, that there was insufficient evidence to convict him of tampering with a witness, and that there was insufficient evidence to support a jury charge of tampering with a witness on the theory of accessory liability.[7] The Appellate Court concluded that there was no double jeopardy violation as to the robbery counts. The court reversed the defendant's conviction of the tampering charge, however, concluding that there was no evidence that the defendant himself had made the telephone call to Robles and that the jury should not have been instructed on accessory liability because, in its view, the evidence was insufficient to support a guilty verdict of accessory liability for tampering with a witness. *State* v. *Ford,* supra, 33 Conn. App. 151. The state conceded in the Appellate Court, and in this court, that it had failed to prove that the defendant personally had made the telephone call in question. The only issue, therefore, is whether there

an accessory under the statute it is not necessary to show an agreement in word or writing. But such an agreement may be inferred from all the circumstances, whether someone is present at the commission of a crime as an accessory to it depends on the circumstances surrounding his presence and his conduct while there. . . . If you find that either the defendant or someone acting at his direction and sharing in the intent necessary for tampering with a witness made a phone call threatening Mr. Robles, then you can find the defendant guilty . . . ."

[7] The Appellate Court considered both of the claims regarding the tampering charge together. The certified issue for appeal to this Court was limited to whether there was sufficient evidence to convict the defendant of tampering on an accessory theory of liability.

was sufficient evidence for the jury to convict the defendant as an accessory of tampering with a witness.

In reviewing a jury verdict that is challenged on the ground of insufficient evidence, we employ a two part analysis. " 'We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.' " *State* v. *Famiglietti,* 219 Conn. 605, 609, 595 A.2d 306 (1991), quoting *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg,* 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990); *State* v. *Carter,* 196 Conn. 36, 44, 490 A.2d 1000 (1985); *State* v. *Heinz,* 193 Conn. 612, 625, 480 A.2d 452 (1984); *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); *State* v. *Ruiz,* 171 Conn. 264, 276–77, 368 A.2d 222 (1976). The evidence must be construed in a light most favorable to sustaining the jury's verdict. *State* v. *Carter,* supra, 44. It is within the province of the jury to draw reasonable and logical inferences from the facts proven. Id.; *State* v. *Williams,* 169 Conn. 322, 336, 363 A.2d 72 (1975). The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. *State* v. *Williams,* 202 Conn. 349, 355, 521 A.2d 150 (1987); *State* v. *Carter,* supra, 44–45; *State* v. *Gabriel,* 192 Conn. 405, 425, 473 A.2d 300 (1984); *State* v. *Gonski,* 155 Conn. 463, 468, 232 A.2d 483 (1967); *State* v. *Hayes,* 127 Conn. 543, 555, 18 A.2d 895 (1941). Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are "so unreasonable as to be unjustifiable." *State* v. *Hayes,* supra, 555.

" 'While the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt.' " *State* v. *Adams,* 225 Conn. 270, 276–77, 623 A.2d 42 (1993), quoting *State* v. *Stanley,* 223 Conn. 674, 678, 613 A.2d 788 (1992). Proof beyond a reasonable doubt requires that the evidence exclude every reasonable hypothesis of innocence. *State* v. *Little,* 194 Conn. 665, 671–72, 485 A.2d 913 (1984); *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984). "But the requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Emphasis needs to be placed on the distinction between the word reasonable and the word possible. . . . Proof of guilt must exclude every reasonable supposition of innocence . . . [while a] mere possible hypothesis of innocence will not suffice." (Citations omitted; internal quotation marks omitted.) *State* v. *Little,* supra, 672; *State* v. *Morrill,* supra, 611.

We do not sit as the "seventh juror" when we review the sufficiency of the evidence; *State* v. *King,* 216 Conn. 585, 602, 583 A.2d 896 (1990); rather, we must determine, in the light most favorable to sustaining the verdict, whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict of guilt beyond a reasonable doubt. Moreover, "[i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Little,* supra, 194 Conn. 674.

Sections 53a-151 and 53a-8 make it a crime for a person, believing that an official proceeding is pending or about to be instituted, to solicit, request, command, importune or intentionally aid another to induce a witness to withhold testimony from that official proceeding. The issue in the present case, therefore, can be restated as raising the question whether the jury could have drawn reasonable inferences from the evidence presented at trial to enable it to conclude beyond a reasonable doubt that it was the defendant who had caused the threatening collect call to be made to Robles.

The state contends that there was sufficient evidence to support the jury's conclusion. It claims that the defendant's conviction was based on reasonable inferences drawn from the evidence presented. We agree.

The evidence demonstrated that Robles had received a collect telephone call from the cellblock in which the defendant was being held, threatening that if Robles testified on Thursday he would be a "dead man." The jury reasonably could have inferred that the defendant was the only inmate who had a motive to prevent Robles from testifying and to induce another inmate to make a threatening call. Furthermore, the evidence indicated that the caller had more than casual knowledge of the defendant's case, and particularly of Robles' involvement. Using its common sense and experience, the jury reasonably could have inferred that, at the relevant time, inmates other than the defendant would not have known that Robles was a key witness for the state who would be testifying against the defendant on Thursday, June 4, 1992. The jury reasonably could have inferred, further, that the defendant intentionally provided the information to the other inmates to solicit, request, command, importune, or intentionally aid one of them in tampering with Robles' testimony. See General Statutes § 53a-8 (a).

It is significant that the collect call from the cellblock was the first call in a series of threatening calls that included calls that were not made from the cellblock. These three or four calls were directed to the witness at his home just four days before he was slated to testify against the defendant, and were the only threatening calls that he had received relating to the robbery since its occurrence eighteen months earlier. This is significant because it tends to rebut the defendant's hypothesis that perhaps the call from the cellblock had been made voluntarily by another inmate to curry favor with the defendant or in an effort to inculpate him further. For either of these hypotheses to be reasonable, the other inmate not only would have had to have learned from someone other than the defendant that Robles was scheduled to testify on Thursday, June 4, 1992, but also would have had to time his call, by sheer happenstance, so that it became the first of a series of threatening calls made to Robles on the night of June 1, 1992. Although the defendant's scenario was a possibility, the jury apparently rejected it. We cannot say that it acted unreasonably in doing so. "Proof of guilt must exclude every reasonable supposition of innocence. . . . [A] mere possible hypothesis of innocence will not suffice." (Citations omitted; internal quotation marks omitted.) *State* v. *Little,* supra, 194 Conn. 672; *State* v. *Morrill,* supra, 193 Conn. 611.

While the defendant raised other possible hypotheses to explain the collect call, the jury reasonably could have inferred, on the basis of the totality of the circumstances; see *State* v. *Williams,* supra, 169 Conn. 336; that the only person who had the motive, opportunity, and detailed knowledge necessary to contact and threaten Robles was the defendant. A logical inference from the evidence presented was that the defendant solicited, requested, commanded, importuned or intentionally aided another to induce Robles to withhold

testimony or otherwise absent himself from the proceedings against the defendant. After reviewing the evidence in the light most favorable to sustaining the jury's verdict, as we must; *State* v. *Carter,* supra, 196 Conn. 44; we conclude that sufficient evidence existed to allow the jury reasonably to have determined that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti,* supra, 219 Conn. 609.

The judgment of the Appellate Court is reversed with respect to the conviction of tampering with a witness and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion PETERS, C. J., and BORDEN and NORCOTT, Js., concurred.

BERDON, J., dissenting. I agree with the well reasoned opinion of the Appellate Court that the evidence was insufficient to convict the defendant of tampering with a witness. "The due process clause 'protects the accused against conviction except upon proof [by the state] beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) . . . ." *State* v. *Rouleau,* 204 Conn. 240, 252, 528 A.2d 343 (1987). As the Appellate Court correctly noted, proof beyond a reasonable doubt cannot be based on the jury's "speculation and conjecture"; (internal quotation marks omitted) *State* v. *Ford,* 33 Conn. App. 143, 150, 634 A.2d 1188 (1993); but in the present case "it is speculation that the defendant solicited, requested, commanded or importuned another person to make the phone call." Id., 150–51.

There are two evidentiary deficiencies in the state's case that I find particularly noteworthy. First, the majority relies heavily on the claim that the jury rea-

sonably could have inferred that the defendant knew that Robles was scheduled to testify against him on Thursday, June 4, 1992. The majority does not explain, however, its failure to point to *any* evidence that would support this inference. The simple answer is that there is no such evidence and the jury's "common sense and experience" cannot fill this gap without resorting to pure speculation.

Second, the state passed up the opportunity to admit significant circumstantial evidence that might have taken this case out of the realm of speculation and conjecture. As I noted in my dissent in *Ullmann* v. *State*, 230 Conn. 698, 724, 647 A.2d 324 (1994), a related case that was decided on this date the prosecutor did not seek to introduce, through his own testimony and the testimony of prison officials or other witnesses, the following weighty circumstantial evidence: the prosecutor had met with the defendant's attorney, Thomas Ullmann, on the day of the telephone call to Robles at approximately 4 p.m.; in that meeting, for the first time, he gave Robles' telephone number to Ullmann; the telephone number was not readily available to the public because it was listed under the name "Santos-Robles" in the telephone directory; approximately two hours later, Ullmann met with Ford in a professional visit at New Haven community correctional center; Robles was a material witness to the prosecution and was scheduled to testify on the following Thursday; none of the other nineteen inmates who had access to the telephone from which the threatening call was made only hours later had any connection to the prosecution of Ford.

I am deeply troubled with this case and the related *Ullmann* case. In the present case, the majority upholds a conviction for which there was insufficient evidence. In *Ullmann*, the majority upholds the conviction of a pub-

lic defender of criminal contempt for doing what he perceived, and I agree, was professionally required of him. In neither case does this court do justice.