## STATE OF CONNECTICUT *v.* RAYMOND APONTE
## (AC 20234)

Landau, Zarella and Daly, Js.

Argued September 28, 2000—officially released April 24, 2001

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *John F. Blawie,* assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Raymond Aponte, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a),[1] and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a)[2]. The defendant claims that the court improperly instructed the jury by (1) failing to charge that the crime of conspiracy to commit murder requires a specific intent to cause the death of the victim, (2) charging that one who uses a deadly weapon on the vital part of another will be deemed to have intended the probable result of that act and (3) charging that the defendant could be guilty of murder as a principal when there was insufficient evidence to support such a conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 3, 1996, at approximately 12:55 p.m., the victim, Aldrich Mitchell, and two eyewitnesses, Luz Rosado and Juan Vasquez, were standing in front of Rosado's apartment in the Green Homes apartment complex on Harral Avenue in Bridgeport. As the three of them stood talking, three males approached. Two of them were wearing ski masks, sunglasses and hoods that covered their faces. Vasquez later identified the

[1] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

three men as Luis Delvalle, Jose Garcia and the defendant. All three men were armed.

The victim attempted to enter Rosado's apartment and was told by one of the men not to enter the apartment but to come with them. The victim followed the three men away from Rosado's apartment and toward the driveway of the Green Homes apartment complex. Rosado went into her apartment and watched through her window as the victim left with the three men. The victim turned and ran away from the three men. All three men then turned and fired their weapons at the victim. Rosado heard seven or eight gunshots.[3] The three men then fled, and Vasquez ran to the victim. Vasquez observed a bullet wound to the victim's head.[4] Vasquez waited with the victim for an ambulance to come and then left the scene after the victim was taken to a hospital.

I

The defendant first claims that the court improperly instructed the jury concerning the specific intent necessary to convict him of conspiracy to commit murder. Specifically, the defendant claims that when the court gave its instruction on the charge of conspiracy to commit murder, it failed to instruct the jury that it needed to find that he had the specific intent necessary to

[3] Detective Leonard Sattani of the Bridgeport police department investigated the shooting. He discovered eleven spent cartridge casings and one spent bullet at the scene. Edward McPhillips, a firearms examiner for the state of Connecticut, examined the bullet and cartridge casings. He testified that five of the cartridges came from one gun and that the remaining six could have come from one gun or several different guns.

[4] Malka B. Shah, an associate medical examiner for the state of Connecticut, performed an autopsy on the victim. She testified that a single bullet entered the victim's body at the lower part of his shoulder, initially exited at the top of his shoulder, reentered at the back of his head and came to rest at the left side of his jaw. The bullet damaged the victim's spinal cord and brain, thereby causing his death. Shah certified the cause of the victim's death as a gunshot wound to the head and neck.

commit murder. The defendant concedes that he failed to preserve this claim at trial and therefore seeks review under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[5] Because the record is adequate for review and the claim advanced implicates a fundamental constitutional right,[6] the defendant has satisfied the first two prongs of *Golding* and is entitled to review of his unpreserved claim.

"[U]nder . . . *Golding,* a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, [i]t is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, it is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . Furthermore, [a] jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of

[5] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

[6] A defendant has a fundamental constitutional right to have the jury properly instructed as to each element of the crime with which he has been charged. See *State* v. *Hinton,* 227 Conn. 301, 308, 630 A.2d 593 (1993).

the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *White*, 55 Conn. App. 412, 419, 740 A.2d 399, cert. denied, 252 Conn. 908, 743 A.2d 621 (1999).

"To establish the crime of conspiracy under § 53a-48 of the General Statutes, it must be shown that an agreement was made between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy by any one of the conspirators. . . . To prove the offense of conspiracy to commit murder, the state must prove two distinct elements of intent: that the conspirators intended to agree; and that they intended to cause the death of another person." (Citation omitted; internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

The state was required to prove, therefore, that (1) the defendant and either Delvalle or Garcia intentionally agreed to cause the death of another person, (2) at the time of the agreement, the defendant intended that a death be caused and (3) the defendant, Delvalle or Garcia committed an overt act in furtherance of the conspiracy. See id., 771–72.

At the conclusion of the evidence, the court charged the jury, inter alia, regarding the elements of both murder and conspiracy to commit murder. With regard to conspiracy, the court charged, inter alia, as follows: "If you find that there was an agreement to engage in conduct constituting a crime and that the agreement was followed by an act or acts directed to achieve or further the objective of the conspiracy, you must still determine whether the defendant had criminal intent. The defendant may not be found guilty unless the state has proven beyond a reasonable doubt he had specific

intent to violate the law when he entered into the agreement to engage in conduct constituting a crime." After the jury deliberated for some time, it requested that the court reinstruct it as to the definition of both murder and conspiracy to commit murder. The court did so and, in its supplemental charge, again provided the previously discussed charge with regard to the intent required for the crime of conspiracy to commit murder. Following the supplemental charge, defense counsel took exception to the court's charge regarding the intent element of conspiracy to commit murder. The court then provided a curative instruction that clarified that the crime related to the conspiracy was murder. Specifically, the court charged as follows: "I just want to add one thing . . . and that is when we talk about the conspiracy, the crime that's related to conspiracy is murder so, in other words, the question is whether there was a conspiracy to commit murder as I've defined that for you."

Our review of the court's instruction reveals that it provided the jury with the elements of the crime of conspiracy to commit murder, a clear understanding of those elements and ample guidance on how to determine their presence in the evidence. The jury was not misled. The instructions as a whole were, therefore, constitutionally adequate.

## II

The defendant next claims that the court violated his due process rights by improperly instructing the jury that one who uses a deadly weapon on the vital part of another will be deemed to have intended the probable result of that act. We note that in his brief, the defendant concedes that his claim is unpreserved and that he is seeking review under *State* v. *Golding,* supra, 213 Conn. 233. We will review his claim because the record is

adequate for review and the claim is constitutional in nature.

The Supreme Court has "stated that [o]ne who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill." (Internal quotation marks omitted.) *State* v. *Tomasko*, 238 Conn. 253, 259, 681 A.2d 922 (1996). The court instructed the jury regarding the intent to cause death as follows: "An intent to cause death *may be inferred* from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to it [and] immediately following the death. One who uses a deadly weapon on the vital part of another *will be deemed* to have intended the probable result of that act [and] from such a circumstance a proper inference *may be drawn* that there was an intent to kill." (Emphasis added.) The court repeated that language in its supplemental instruction. The defendant claims that this charge violates the holding of *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), by creating a conclusive presumption that the use of a deadly weapon on the vital part of another established an intent to cause the death of another or placed the burden on the defendant to disprove that intent. We disagree.

"In *Sandstrom* v. *Montana*, supra, [442 U.S.] 517–24, the United States Supreme Court held that a jury instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a conclusive or burden-shifting presumption and thus relieved the state of its burden of proving every element of the crime. . . . We have, however, recognized that the rule

of *Sandstrom* must not be oversimplified. . . . *Sand-strom* does not invalidate, for example, the use of an entirely permissive inference or presumption, which allows . . . the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. . . . A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." (Citations omitted; internal quotation marks omitted.) *State* v. *Diaz*, 237 Conn. 518, 545, 679 A.2d 902 (1996).

"We must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction." *State* v. *Turmon*, 34 Conn. App. 191, 201, 641 A.2d 138, cert. denied, 229 Conn. 922, 642 A.2d 1216 (1994). We conclude, after reviewing the charge as a whole, that it is not reasonably possible that the jury was misled by the instruction. As an initial matter, the charge was consistent with our Supreme Court's rationale in *State* v. *Tomasko*, supra, 238 Conn. 259, as to inferences a jury may draw from evidence. The court charged that intent *may* be inferred from circumstantial evidence. The court next charged that one who uses a deadly weapon on the vital part of another will be deemed to have intended the probable result of that act. The court instructed the jury that it *may* draw an inference from those facts that there was an intent to kill. The court did not instruct the jury that it was required to draw such an inference. No rational juror could have concluded that he was required to draw the inference that the defendant intended to cause the victim's death simply because the defendant used a deadly weapon. Because the charge did not require the jury to entertain a conclusive presumption, the defendant has failed to demonstrate that the court's charge constituted a clear constitutional violation. See *State* v. *Turmon*, supra, 201.

## III

The defendant next argues that the court improperly instructed the jury that he could be found guilty of murder as a principal because there was not sufficient evidence that he fired the fatal shot. The defendant again concedes that this issue is unpreserved, and he is, therefore, seeking review pursuant to *State* v. *Golding*, supra, 213 Conn. 233. This claim, however, is not of constitutional magnitude and, therefore, does not meet the second prong of *Golding*. See *State* v. *Tinsley*, 47 Conn. App. 716, 719, 706 A.2d 1008, cert. denied, 244 Conn. 915, 713 A.2d 833 (1998).

According to the defendant, the victim was killed by a single bullet that may have been fired by any one of three individuals. Because the evidence was insufficient to prove beyond a reasonable doubt that he *caused* the death of the victim, the defendant argues that the court improperly charged the jury that he could be convicted of murder as a principal. The defendant claims that this charge permitted the jury to find him guilty on a theory of committing the offense that was unsupported by the evidence. In support of his claim, the defendant argues that, pursuant to *State* v. *Williams*, 202 Conn. 349, 364, 521 A.2d 150 (1987), and *State* v. *Chapman*, 229 Conn. 529, 540, 643 A.2d 1213 (1994) (en banc), an instruction based on a theory of liability that is unsupported by the evidence may be constitutionally infirm even though the conviction is warranted under an alternative theory of liability.

In *Chapman*, our Supreme Court distinguished between a conviction that is based on legally insufficient grounds and one that is unsupported by the evidence. The court stated that its earlier decision in *Williams* "was founded on our interpretation of federal cases holding that including an instruction on a factually unsupported theory of liability constituted a federal due

process violation. . . . Since *Williams* was decided, however, the United States Supreme Court has held that a factual insufficiency regarding one statutory basis, which is accompanied by a general verdict of guilty that also covers another, factually supported basis, is not a federal due process violation. *Griffin* v. *United States*, 502 U.S. 46, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). The defendant's claim in this case is analogous to the claim in *Griffin*. Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law— whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of a crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence . . . .

"It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient. Id., 59–60." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Chapman*, supra, 229 Conn. 539–40.

The court in the present case instructed the jury as to both methods of committing murder, as a principal or as an accessory. As in *Chapman*, the instruction at issue was based on a legally adequate theory of liability. The defendant, in fact, concedes that there was sufficient evidence to convict him of murder as an accessory

and agrees that the court properly instructed the jury in that regard. While there may have been insufficient evidence to support the theory that the bullet that killed the victim had been fired by the defendant, the instruction was of a factual nature, and the jurors were "well equipped to analyze the evidence"; (internal quotation marks omitted) id., 540; and to assess whether the defendant committed the offense of murder as a principal or as an accomplice. We therefore conclude that the defendant's claim is not of constitutional magnitude and, thus, decline to review it. See *State* v. *Sanko*, 62 Conn. App. 34, 40, 771 A.2d 149, cert. denied, 256 Conn. 905, 772 A.2d 599 (2001); *State* v. *Tinsley*, supra, 47 Conn. App. 720.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] We further note that the accessory statute, General Statutes § 53a-8, provides an alternative theory under which the state may prove liability for the underlying substantive crime, in this case, murder. "Under General Statutes § 53a-8 (a), there is no practical significance in being labeled an accessory or a principal for the purpose of determining criminal responsibility. . . . The terms refer to the alternate means by which one substantive crime may be committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 212 Conn. 593, 606, 563 A.2d 671 (1989).