# STATE OF CONNECTICUT *v.* DAVID B. ELLISTON
## (AC 25550)

Bishop, West and DiPentima, Js.

Argued October 14—officially released December 14, 2004

*Robert M. Berke,* for the appellant (defendant).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Margaret E. Kelley,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, David B. Elliston, appeals from the judgment of conviction, rendered after a jury trial, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), assault in the first degree in violation of General Statutes § 53a-59 (a) (5) and carrying a dangerous weapon in violation of General Statutes § 53-206 (a). The defendant claims that the trial court's denial of his motion to suppress the victim's pretrial photographic identification and subsequent in-court identification of him violated his due process rights.[1] We affirm the judgment of the trial court.

On the evening of November 15, 2001, or the early morning of November 16, 2001, the victim, Kirk Reid, was standing outside the Yellow Bird Social Club in Bridgeport, when he observed the assailant exit a vehicle and approach him with a shot gun. As the victim began to run, the assailant shot him in the back of the legs, causing him to fall to the ground. The assailant then moved in front of the victim and, attempting to shoot him in the head, shot him once in each shoulder before leaving the scene. During the incident, the street

[1] The defendant also initially raised on appeal the court's failure to charge the jury on an essential element of the crime of carrying a dangerous weapon, to wit, the lack of a proper permit. The defendant explicitly abandoned this issue in his reply brief.

was well lit and the victim was able to see the assailant's face.

When patrol officer Juan P. Gonzalez of the Bridgeport police department arrived at the scene, he found the victim in critical condition and inarticulate. Officer Gonzalez followed the victim to the hospital where he briefly interviewed the victim, who said he could identify the shooter, but did not provide a name. On November 16, 2001, Detective Juan R. Gonzalez went to the hospital and spoke with the victim, who informed him that the assailant was "Dave," a Jamaican male who lived in the area of Beechwood Avenue in Bridgeport. On November 26, 2001, the victim described the assailant to Detective Gonzalez as a black male, five feet, nine inches tall, clean shaven, with a thin build and "corn rolls."[2]

At some point following the incident, Detective Gonzalez brought a single photograph of someone who met the victim's description of his assailant to the hospital for the purpose of identification. The victim indicated that the photograph was not of his assailant. Subsequently, on December 1, 2001, Detective Gonzalez brought a single photograph of the defendant to the hospital for identification purposes. The victim identified the defendant as his assailant. Detective Gonzalez possessed a photographic array on December 1, 2001, that included the photograph of the defendant that the victim had identified as that of his assailant, but did not show it to the victim until December 12, 2001. When presented with the photographic array, the victim immediately identified the photograph of the defendant and stated that he was "100 percent positive" that the man depicted in the photograph was his assailant. The victim knew the defendant as "Dave" from Colonial

---

[2] We understand the victim to mean cornrows, a hairstyle in which the hair is divided into sections and braided close to the scalp in rows.

Toyota in Milford, where they both worked, and by the nickname "Bartley" from the neighborhood and from the Yellow Bird Social Club.

The defendant was charged with attempt to commit murder, assault in the first degree and carrying a dangerous weapon. At the beginning of trial, the defendant, pursuant to Practice Book § 41-12 et seq. and article first, § 8, of the constitution of Connecticut, filed a motion to suppress the out-of-court and in-court identifications of him. The defendant argued, inter alia, that the use of the single photograph was unnecessarily suggestive and that the inclusion of that picture in the array made that identification and all subsequent identifications unreliable because the picture had already been identified by the victim as depicting the assailant, and it was lighter than the other photographs in the array. The court denied the defendant's motion, holding that although the identification procedure bore a hint of suggestiveness, it was not unnecessarily suggestive and, at any rate, it was reliable under the totality of the circumstances. Following a trial by jury, the defendant was found guilty on all counts and sentenced to a total effective term of twenty-five years imprisonment.[3] This appeal followed.

On appeal, the defendant claims that the court improperly denied his motion to suppress because the presentation of a single photograph for the purpose of identification was unnecessarily suggestive and resulted in an unreliable identification.

Our standard of review in connection with a court's denial of a motion to suppress a pretrial identification is well settled. "Upon review of a trial court's denial of

---

[3] The defendant's sentences with respect to his convictions of attempt to commit murder and assault in the first degree were enhanced pursuant to General Statutes § 53-202k, which provides for such enhancement when a firearm is used in the course of a felony.

a motion to suppress, [t]he court's conclusions will not be disturbed unless they are legally and logically inconsistent with the facts. . . . [W]e will reverse the trial court's ruling [on evidence] only where there is abuse of discretion or where an injustice has occurred . . . and we will indulge in every reasonable presumption in favor of the trial court's ruling. . . . Because the issue of the reliability of an identification involves the constitutional rights of an accused . . . we are obliged to examine the record scrupulously to determine whether the facts found are adequately supported by the evidence and whether the court's ultimate inference of reliability was reasonable." (Internal quotation marks omitted.) *State* v. *Thompson*, 81 Conn. App. 264, 269, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004).

In determining whether an identification procedure violated the defendant's due process rights, the court undertakes a two part inquiry: "[F]irst, it must be determined whether the identification procedure was unnecessarily suggestive; and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on an examination of the totality of the circumstances." (Internal quotation marks omitted.) Id. "An identification procedure is unnecessarily suggestive only if it gives rise to a very substantial likelihood of irreparable misidentification. . . . The defendant bears the burden of proving . . . that the identification procedures were unnecessarily suggestive . . . ." (Internal quotation marks omitted.) Id., 269–70. "Generally, [t]he exclusion of evidence from the jury is . . . a drastic sanction, one that is limited to identification testimony which is manifestly suspect." (Internal quotation marks omitted.) *State* v. *Sanchez*, 69 Conn. App. 576, 581, 795 A.2d 597 (2002).

The use of a single photograph for identification purposes is not overly suggestive per se. *State* v. *Ortiz*,

252 Conn. 533, 554, 747 A.2d 487 (2000). It is, however, absent exigent circumstances, "almost always unnecessarily and impermissibly suggestive." *State* v. *Findlay*, 198 Conn. 328, 338, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986). "The danger of misidentification of a suspect by a witness is increased where the photograph of an individual is in some way emphasized. . . . Showing a witness a single photograph rather than an array of photographs obviously emphasizes that photograph. . . . Any one-to-one type confrontation between a witness or victim and a person whom the police present to him as a suspect must necessarily convey the message that the police have reason to believe that person guilty." (Citations omitted.) *State* v. *Evans*, 200 Conn. 350, 355–56, 511 A.2d 1006 (1986).

Detective Gonzalez presented the victim with a single picture of the defendant, despite the fact that he had a full photographic array available. Only after the victim used that single photograph to identify the defendant as his assailant did the detective provide the victim with the array containing the same photograph of the defendant. This procedure unduly emphasized the photograph of the defendant. Furthermore, no exigent circumstances existed. "This is not a situation where the [victim] did not know the shooter and [could] readily forget the description of who had committed the crime." *State* v. *Colon*, 70 Conn. App. 707, 721, 799 A.2d 317, cert. denied, 261 Conn. 933, 806 A.2d 1067 (2002). The procedure by which the victim identified the defendant was, therefore, unnecessarily suggestive.

We conclude, however, that despite the suggestiveness of the identification procedure, the identification itself was reliable based on the totality of the circumstances. "[R]eliability is the linchpin in determining the admissibility of the identification testimony . . . ." (Internal quotation marks omitted.) *State* v.

*Thompson,* supra, 81 Conn. App. 270. In evaluating the reliability of an identification procedure, the court considers various factors, "such as the opportunity of the [victim] to view the criminal at the time of the crime, the [victim's] degree of attention, the accuracy of [his] prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." (Internal quotation marks omitted.) Id.

According to testimony at trial, the victim was able to see the assailant's face. The victim was able to identify the assailant within twenty-four hours of the incident as a Jamaican male named Dave, who lived in the area of Beechwood Avenue. Ten days later, the victim was able to further describe the assailant as a thinly built, clean shaven, five feet, nine inch tall, black male with "cornrolls." The record makes clear that the defendant generally met this description. The victim was able to state conclusively that the man in the first single photograph that he was presented with was not his assailant. When he was subsequently presented with a single photograph of the defendant, however, the victim was immediately able to identify it as that of his assailant. The victim immediately and with certainty identified the photograph of the defendant as that of his assailant when it was included in the photographic array.

A determination of reliability could be undermined by the facts that the initial identification was made two weeks after the incident in a somewhat suggestive manner by a single photograph and that the single photograph was subsequently used in the photographic array by which identification was made an entire month after the incident. An examination of the totality of the circumstances, however, leads us to conclude other-

wise. First, this is not a case in which the victim had been attacked by an unknown assailant. The victim knew the defendant from his place of employment, from his neighborhood and from the Yellow Bird Social Club. Second, the victim was first shown a single photograph of someone other than the defendant. It is thus highly unlikely that the use of a single photograph to identify the defendant in any way hampered the victim's ability to accurately identify his assailant.

The judgment is affirmed.

In this opinion the other judges concurred.